UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20723-CIV-ALTONAGA/Reid

In re: Petition for Exoneration from or
Limitation of Liability by Royal Caribbean
Cruises Ltd. as owner of the 2022 Sea-Doo
GTX PRO 130 vessels,

    Petitioner.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Petitioner/Counter-Defendant, Royal Caribbean Cruises Ltd.'s Amended Motion to Dismiss Statement of Claims of Laureen Pellegrino and Motion to Strike Claimant's Affirmative Defenses [ECF No. 30], filed on June 5, 2024. Claimant/Counter-Claimant, Laureen Pellegrino filed a Response [ECF No. 35], to which Petitioner/Counter-Defendant filed a Reply [ECF No. 36]. The Court has carefully considered the Statement of Claims [ECF No. 15], the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

In July 2023, Claimant went on a cruise owned and operated by Petitioner.[1] (*See* Statement of Claims ("SOC") ¶ 3). On July 21, 2023, the cruise was at port at Petitioner's private island in the Bahamas, CocoCay. (*See id.* ¶¶ 7–8). That day, Claimant went on a "personal watercraft guided tour" organized, promoted, and run by Petitioner; Claimant signed up for the tour the day before on the cruise ship. (*Id.* ¶ 10; *see also id.* ¶¶ 7–10, 13).

---

[1] For ease of reference, "Claimant" is Claimant/Counter-Claimant, Laureen Pellegrino, and "Petitioner" is Petitioner/Counter-Defendant, Royal Caribbean Cruises Ltd.

After watching a 15-minute training video, Claimant, a novice operator of personal watercrafts, set off on the tour that included nine participants and two tour guides. (*See id.* ¶¶ 13–15). The group operated the personal watercrafts individually, then met up as a group at designated stopping points. (*See id.* ¶¶ 15, 41). The tour guides told a slower, uncomfortable rider to "go fast to the next meeting point." (*Id.*). The tour was advertised as "no experience . . . necessary" and "ideal for novice operators[.]" (*Id.* ¶ 10 (alterations added)).

Not so ideal, the uncomfortable rider crashed into Claimant at the meeting point. (*See id.* ¶ 15). Claimant was knocked unconscious, thrown into the water, and suffered broken ribs and a torn lung; she was taken by medivac to Fort Lauderdale, Florida for medical treatment. (*See id.* ¶ 16).

On February 23, 2024, Petitioner filed a Petition for Exoneration from or Limitation of Liability [ECF No. 1], under the Limitation of Liability Act, 46 U.S.C. section 30501 *et seq.*, and Supplemental Admiralty Rule F; Petitioner seeks, as the title suggests, an exoneration from or limitation of liability for the incident. (*See generally id.*). After Petitioner published notice (*see* Proof of Service by Publication [ECF No. 10]), Claimant filed an Answer and Affirmative Defenses [ECF No. 14] to the Petition. She raises 13 affirmative defenses to the Petition. (*See* Answer 6–10).[2]

Claimant subsequently filed her Statement of Claims against Petitioner. (*See generally* SOC). Claimant brings five claims against Petitioner: negligence (*see id.* ¶¶ 27–33); vicarious liability for negligence (*see id.* ¶¶ 34–43); negligent failure to warn (*see id.* ¶¶ 44–50); negligent training of personnel (*see id.* ¶¶ 51–60); and negligent entrustment (*see id.* ¶¶ 61–71).

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

2

Petitioner first argues the Statement of Claims should be dismissed in its entirety because Claimant fails to allege that Petitioner knew or should have known of any dangerous condition. (*See* Mot. 4–9). Petitioner then contends Claimant fails to state a vicarious liability claim, and the negligent training and negligent entrustment counts should be dismissed as duplicative. (*See id.* 9–12). Petitioner also asks the Court to strike from the Statement of Claims, references to statutes, rules, and standards. (*See id.* 12–14). Petitioner then turns to Claimant's affirmative defenses, asking the Court to strike the defenses as denials, legal conclusions, and/or invalid defenses. (*See id.* 14–18).

## II. LEGAL STANDARDS

***Motion to Dismiss.*** "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-[petitioner]-unlawfully-harmed-me accusation." *Id*. (alterations added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," the claimant must "plead[] factual content that allows the court to draw the reasonable inference that the [petitioner] is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the

[petitioner] acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (alteration added; citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the claimant and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

*Motion to Strike.* Under Federal Rule of Civil Procedure 12(f):

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). "A motion to strike is intended to . . . remov[e] irrelevant or otherwise confusing materials." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013) (citations omitted). Thus, "[m]otions to strike generally are disfavored and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-Civ, 2005 WL 975773, at *11 (S.D. Fla. Mar. 4, 2005) (quotation marks omitted).

"An affirmative defense must be stricken when the defense is comprised of no more than bare-bones, conclusory allegations or is insufficient as a matter of law." *Island IP Acquisitions, LLC v. Antle*, No. 22-cv-81293, 2023 WL 7385162, at *3 (S.D. Fla. Nov. 8, 2023) (alteration adopted; citation and quotation marks omitted). "An affirmative defense is insufficient as a matter of law where: (1) in the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Id.* (citation and quotation marks omitted).

### III. DISCUSSION

As stated, Petitioner requests the Court dismiss all counts, strike part of Claimant's Statement of Claims, and strike her affirmative defenses. The Court addresses each issue in turn.

**A. Motion to Dismiss**

   *1. All Counts*

To properly state a negligence claim under federal maritime law,[3] a plaintiff, or as here, a claimant, must allege four elements: "(1) a legal duty on the [petitioner] to protect the [claimant] from particular injuries; (2) the [petitioner's] breach of that duty; (3) the [claimant's] injury being actually and proximately caused by the breach; and (4) the [claimant] suffering actual harm from the injury." *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1357 (S.D. Fla. 2016) (alterations added; citation and quotation marks omitted). Petitioner owes its passengers a duty of "reasonable care under the circumstances." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959) (holding "the owner of a ship in navigable waters owes to all who are on board . . . the duty of exercising reasonable care under the circumstances of each case" (alteration added; footnote call number omitted)). A carrier's duty of reasonable care includes a "duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1046 (11th Cir. 2019) (citation and quotation marks omitted).

Petitioner asserts Claimant's claims fail to allege sufficient facts to show Petitioner knew or should have known of a dangerous condition. (*See* Mot. 4–11). As a prerequisite to liability, a petitioner must have either actual or constructive notice of the condition that created the risk to the

---

[3] The parties agree admiralty jurisdiction and maritime law apply. (*See* SOC ¶ 8; Mot. 3–4); *see also Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1392 (S.D. Fla. 2014) ("In a claim based on an alleged tort occurring at an offshore location during the course of a cruise, federal maritime law applies, just as it would for torts occurring on ships sailing in navigable waters." (citations omitted)).

passenger. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam) (finding the duty of care owed by a shipowner to its passengers is "ordinary reasonable care under the circumstances . . . which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition" (alteration added)). Claimant may show Petitioner had constructive notice in two ways: "she can put forward evidence that the defective condition existed for a sufficient period of time to invite corrective measures"; or "she can submit evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior incident." *Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 511 (11th Cir. 2019) (citations and quotation marks omitted).

Claimant properly alleges Petitioner had notice of the risk of collision. (*See generally* SOC). Claimant offers the following facts to demonstrate notice: there were prior similar incidents (*see id.* ¶ 17); Petitioner took corrective action by removing advertising language that welcomed beginners on the tour (*see id.* ¶ 18); crew members were in the vicinity (*see id.* ¶ 19); the dangerous condition existed for an extended period (*i.e.*, since the time the excursion was first offered) (*see id.* ¶ 20); the risks of the tour were an on-going, repetitive problem (*see id.* ¶ 21); Petitioner implemented policies and procedures and trainings to warn guests of dangers and prioritize guest safety (*see id.* ¶ 22); Petitioner required tour participants to view a pre-ride safety video (*see id.* ¶ 23); the personal watercraft owner/operator manual contained warnings and instructions about the watercraft (*see id.* ¶ 24); Petitioner failed to comply with industry standards, laws, and rules (*see id.* ¶ 25); and passengers previously complained on Petitioner's website about being rushed by tour guides to meeting points (*see id.* ¶ 26).

Four of Claimant's allegations describe "corrective action" taken by Petitioner, which

stand alone to "establish notice of a dangerous or detective condition." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020); *see also Anders v. Carnival Corp.*, No. 23-21367-Civ, 2023 WL 4252426, at *6 (S.D. Fla. June 29, 2023) ("a plaintiff may establish *actual* notice with evidence that a ship owner has taken corrective action" (alteration adopted; emphasis original; citation and quotation marks omitted)); (*see also* SOC ¶¶ 18, 22–24). Claimant alleges Petitioner implemented safety policies and trainings, showed a pre-ride safety video, and provided a personal watercraft owner/operator manual; after the incident, Petitioner removed the advertising language welcoming beginners to the excursion. (*See id.* ¶¶ 18, 22–24). These allegations plausibly assert notice.

Petitioner does not address the four allegations regarding its precautionary actions, instead focusing much of its Motion on the purported insufficiency of Claimant's prior incidents allegations. (*See generally* Mot.). But the four unaddressed allegations on their own are plausible allegations that Petitioner had actual notice of a dangerous condition. *See Anders*, 2023 WL 4252426 at *6. Because Claimant alleges notice even without the prior incidents from Claimant's Statement of Claims, it does not address Petitioner's critiques (*see* Mot. 5–7) of the prior incidents Claimant identifies as establishing notice.

In sum, Claimant's factual allegations of notice relating to the dangers involved with the personal watercraft excursion are sufficient to defeat a motion to dismiss.[4] *See, e.g.*, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). "The facts alleged in the complaint are

---

[4] The Court is unpersuaded by Petitioner's reliance on *Holland v. Carnival Corporation*, 50 F.4th 1088, 1095 (11th Cir. 2022), and *Patton v. Carnival Corporation*, No. 22-21158-Civ, 2022 WL 7536256, at *2 (S.D. Fla. Oct. 13, 2022). (*See* Mot. 7–8). In contrast to those cases, where the notice allegations were few and bare, Claimant alleges ten different ways Petitioner had notice. (*See* SOC 17–26). Further, the numerous allegations are plausible, that is, they "allow the court to draw the reasonable inference that the [petitioner] is liable for the misconduct alleged." *Holland*, 50 F.4th at 1096 (alteration added; quoting *Iqbal* 556 U.S. at 678; quotation marks omitted); (*see also* SOC ¶¶ 17–26).

7

plausible and raise a reasonable expectation that discovery could supply additional proof of [Petitioner's] liability." *Id.* (alteration added; citation omitted)).

### 2. *Count II*

Petitioner also argues Claimant "attempts to transform a direct liability claim" — which has a notice requirement — "into one for vicarious liability" — which does not. (Mot. 9). This argument fails: Claimant sufficiently pleads a vicarious liability claim, so there is no notice requirement for Count II.

First, Claimant alleges the individual actions of Petitioner's employees were negligent, and Petitioner should be held responsible for the employees' negligent acts. (*See, e.g.*, SOC ¶¶ 40–42); *see also Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164, 1169 (11th Cir. 2021) ("When the tortfeasor is an employee, the principle of vicarious liability allows an otherwise non-faulty employer to be held liable for the negligent acts of that employee acting within the scope of employment." (alteration adopted; citation and quotation marks omitted)). Although the vicarious liability claim is similar to the direct negligence claim, Claimant is the "master of [] her complaint" (or, here, her Statement of Claims) and "may choose to proceed under a theory of direct liability, vicarious liability, or both." *Yusko*, 4 F.4th at 1170.

Second, a claim predicated on vicarious liability need not contain allegations of the petitioner's notice. *See id.* at 1167 (explaining that the "notice requirement does not . . . apply to maritime negligence claims proceeding under a theory of vicarious liability[]" (alterations added)). In any event, the Court has already found Claimant adequately pleads notice. The Court thus has no reason to dismiss Claimant's vicarious liability count.

### 3. *Counts IV and V*

Petitioner further contends Counts IV and V — negligent training and negligent entrustment, respectively — should be dismissed as duplicative of Count I, the general negligence count. (*See* Mot. 11–12). The Court is not persuaded.

"Negligent training sounds in negligence but is a separate cause of action with distinct elements." *Anders*, 2023 WL 4252426 at *4 (citation omitted). "To state a claim of negligent training, [Claimant] must allege [Petitioner] was negligent in the implementation or operation of the training program and the negligence caused [her] injury." *Id.* (alteration adopted; additional alterations added; citation and quotation marks omitted). "Because negligent training is a discrete claim, it must be pled separately." *Id.* (citation omitted).

Similarly, negligent entrustment is a distinct and separate claim. "The essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the vessel safely." *In re Bowman*, No. 18-cv-71, 2018 WL 3578578, at *2 (M.D. Fla. July 25, 2018) (alteration adopted; citation and quotation marks omitted). This plainly entails different allegations and proofs than a general negligence claim which, as explained, requires a claimant to show the classic tort elements of duty, breach, causation, and harm. *See Heller*, 191 F. Supp. 3d at 1357.

Claimant was correct to separate out the counts. Combining Count IV and V with Count I could result in a shotgun pleading; "courts have routinely dismissed complaints that combine these causes of action into a single count as shotgun pleadings." *Finch v. Carnival Corp.*, No. 23-cv-21704, 2023 WL 7299780, at *8 (S.D. Fla. Nov. 6, 2023) (collecting cases; footnote call number omitted) (discussing negligent hiring, negligent retention, and negligent training).

Petitioner's Motion to Dismiss Claimant's Statement of Claims is therefore denied.

**B. Motion to Strike**

*1. Statement of Claims' Allegations*

The Court begins with Petitioner's request to strike all references to statutes, rules, and industry standards from Claimant's Statement of Claims. (*See* Mot. 12–14). Petitioner argues the statutes, rules, and standards Claimant references in her Statement of Claims "are inapplicable to the instant matter." (*Id.* 13). The Court disagrees.

Courts will strike allegations where "the material has *no possible relation* to the controversy and may cause prejudice to one of the parties." *Williams*, 289 F.R.D. at 699–700 (emphasis added; citation omitted). Petitioner is incorrect that all references to the guidelines are completely irrelevant. Evidence that an allegedly dangerous condition failed to comply with industry standards can supplement other evidence to establish constructive notice. *See Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1282 (11th Cir. 2015) (noting that "evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence." (alteration adopted; quotation marks omitted; quoting *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180 (5th Cir. 1975)); *see also Andersen v. Royal Caribbean Cruises Ltd.*, 543 F. Supp. 3d 1346, 1357 (S.D. Fla. June 14, 2021).

"Compliance or noncompliance with [industry] custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care." *Sorrels*, 796 F.3d at 1282 (alteration added; citation and quotation marks omitted). Claimant's references to industry standards, in addition to relevant statutes and rules, supplement her notice allegations by demonstrating how Petitioner could have "recognized [the] potential danger." *Patton*, 2022 WL 2982699, at *2 (alteration added).

Whether the evidence bears out Claimant's allegations is not before the Court. For now, the Court cannot say "the material has *no possible relation* to the controversy and may cause prejudice to one of the parties." *Williams*, 289 F.R.D. at 699–700 (emphasis added; citations omitted).[5]

### 2. *Affirmative Defenses*

"An affirmative defense is an assertion raising new facts and arguments that, if proven, defeat the [petitioner's] claim even if the allegations in the [petition] are true." *Int'l Sch. Servs., Inc. v. AAUG Ins. Co.*, No. 10-62115-Civ, 2012 WL 5635590, at *8 (S.D. Fla. Nov. 15, 2012) (alteration adopted; other alterations added; citation omitted). "In contrast, a defense that points out a defect in the [petitioner's] ability to prove a *prima facie* case is a denial." *Island IP Acquisitions, LLC*, 2023 WL 7385162, at *3 (alteration added; citation omitted).

Claimant raises 13 affirmative defenses. (*See* Answer 6–10). Petitioner first argued all 13 defenses should be stricken (*see* Mot. 14–17); but after properly conferring, the parties came to agree affirmative defenses 1, 2, 5, 6, 8, and 12 should be treated as denials (Resp. 22; Reply 9); *see also Royal Caribbean Cruises, Ltd. v. Jackson*, 921 F. Supp. 2d 1366, 1372 (S.D. Fla. 2013) ("[W]hen a specific denial is labeled as an affirmative defense, a court will generally treat the defense as a denial and the proper remedy is not to strike the defense but to treat it as a specific denial." (alteration added; citation omitted)).

Thus, the affirmative defenses at issue are as follows:

3. The Complaint filed by Limitation Petitioner is insufficient, unsubstantiated and should be increased pursuant to Supplemental Admiralty Rule F(7).

---

[5] Further, "because the Court finds [Claimant's] allegations otherwise sufficient to imply [Petitioner's] notice, even without her claims about the industry standards, any inadequacies in those allegations are, in any event, inconsequential." *Fadraga v. Carnival Corp.*, No. 23-23503-Civ, 2024 WL 1908980, at *4 (S.D. Fla. Apr. 30, 2024).

11

4. The Limitation Petitioner's liability must be increased pursuant to the "Flotilla Doctrine." The Flotilla Doctrine provides that the vessel owner's liability "may be increased to include his interest in the value of all vessels engaged in a common enterprise or venture with the vessel aboard which the loss or injury was sustained." *Complaint of Patton Tully Transp. Co.*, 715 F.2d 219, 222 (5th Cir. 1993). Petitioner owns and operates a fleet of over 20 cruise ships. Additionally, Petitioner operates private properties such as CocoCay where this incident took place. Limitation Petitioner's liability must be increased to include the value of all vessels under the control of Petitioner, as well as any vessels owned by any partners and/or agents of the Limitation Petitioner engaged in the common enterprise of renting vessels to the general public.

\*\*\*

7. Petitioner provided a vessel, that is the personal watercraft, which was not seaworthy. Under the maritime law, a vessel is not seaworthy when it is manned or operated by improperly trained or incompetent crew. Petitioner knew, should have known, and could have discovered upon minimal investigation whether the requirements of Florida law and the International Navigational Rules were being met and therefore within the privity or knowledge of the Limitation Petitioner. 46 U.S.C. [section] 30505 provides: "Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put onboard the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." This collision, loss, damage, and matter were done, occasioned, or incurred with the knowledge or privity of the "owner" of the vessel and accordingly limitation of liability is not available to these petitioners.

\*\*\*

9. The value of Claimant's claim against the Limitation Petitioner exceeds the Limitation Petitioner's value of its vessel.

10. If liability is determined under 46 U.S.C. section 30505, then the Limitation Petitioner liability must be increased pursuant to 46 U.S.C. section 30506(b).

11. The Limitation Fund is inadequate, and the Complaint should be dismissed because Petitioners have failed to deposit adequate security for the vessel identified in its Complaint for Exoneration from or Limitation of Liability.

\*\*\*

13. Petitioner failed to timely file this Limitation Action.

(*See* Answer 7–10).

Petitioner argues affirmative defenses 3, 7, 9, 10, 11, and 13 should be stricken because they offer impermissible bare legal conclusions. (*See* Mot. 15–16). Petitioner contends these affirmative defenses "all fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 8 and *Twombly* as they merely state legal conclusions without any factual basis." (Mot. 15). Certainly, "the undersigned requires affirmative defenses to meet the pleading standard set out in *Twombly* and *Iqbal*." *Jenkins v. Grant Thornton LLP*, No. 13-60957-Civ, 2014 WL 12634797, at *1 (S.D. Fla. July 22, 2014) (Altonaga, J.) (citation omitted). Petitioner also posits affirmative defense 4 should be stricken as invalid because "the flotilla doctrine is entirely inapplicable to the case at hand[.]" (Mot. 16 (alteration added)). Claimant does not refute Petitioner's contentions, but rather argues these affirmative defenses are better understood as specific denials. (*See* Resp. 22–23).

The Court agrees with Claimant that affirmative defenses 3, 4, 7, 9, 10, 11, and 13 are denials, as they all go to show defects in Petitioner's *prima facie* case. In this regard, "[c]ourts conduct a two-step inquiry to determine the effect of a vessel owner's petition for exoneration from or limitation of liability." *In re Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1171, 1182 (S.D. Fla. 2013) (alteration added; citations and quotation marks omitted). First, a court "determines whether the accident was caused by actionable conduct, for if there was no fault or negligence for the shipowner to be privy to or have knowledge of within the meaning of the statute, there is no liability to be limited," and the owner should be exonerated. *Id.* (citations and quotation marks omitted). "The claimant bears the burden of proving that the accident was caused by actionable conduct. Provided that the claimant carries the burden, the owner then must prove that

the actionable conduct or condition was without his privity or knowledge." *Id.* (citations and quotation marks omitted).

Each defense relates to Petitioner's actionable conduct, privity or knowledge, or another deficiency — such as timeliness — in the Petition. (*See* Answer 7–10). Thus, these defenses really "point[] out a defect in the [petitioner's] ability to prove a *prima facie* case" and are therefore better understood as denials. *Island IP Acquisitions, LLC*, 2023 WL 7385162, at *3 (alteration added; citation omitted). The Court will not strike these portions of Claimant's Answer, but rather treat them as denials instead of affirmative defenses.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** Petitioner/Counter-Defendant, Royal Caribbean Cruises Ltd.'s Amended Motion to Dismiss Statement of Claims of Laureen Pellegrino and Motion to Strike Claimant's Affirmative Defenses **[ECF No. 30]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of July, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:  counsel of record